**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT HUNTINGTON**

MICHAEL WALKER, individually,

Plaintiff,

vs. Civil Action No. : 3:18-cv-01523

M. H. LOVEJOY, in his individual capacity,
B.E. DONAHOE, in his individual capacity,
B.W. PAULEY, in his individual capacity,
PUTNAM COUNTY COMMISSION, a political subdivision of the State of West Virginia,

Defendants.

## COMPLAINT

This complaint, brought pursuant to 42 U.S.C. Section 1983, and the Fourth Amendment to the United States Constitution, arises out of the Defendants' denial of the right to lawfully open carry a firearm in West Virginia, as well as the unreasonable search and seizure of, the Plaintiff on or about December 18, 2016 and on or about February 21, 2017 in Putnam County, West Virginia, within the Southern District of West Virginia.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

## PARTIES

1. The plaintiff, Michael Walker, was at all times relevant hereto a resident of Scott Depot, Putnam County, West Virginia, within the Southern District of West Virginia.

2. Defendant M. J. Lovejoy is and was at all times relevant hereto a resident of Putnam County, West Virginia, with an address of 236 Courthouse Drive, Suite 8, Winfield, West Virginia 25213 and is employed by the Putnam County Sheriff's Department. He is named in his individual capacity.

3. Defendant B.E. Donahoe is and was at all times relevant hereto a resident of Putnam County, West Virginia, with an address of 236 Courthouse Drive, Suite 8, Winfield, West Virginia 25213 and is employed by the Putnam County Sheriff's Department. He is named in his individual capacity.

4. Defendant B.W. Pauley is and was at all times relevant hereto a resident of Putnam County, West Virginia, with an address of 236 Courthouse Drive, Suite 8, Winfield, West Virginia 25213 and is employed by the Putnam County Sheriff's Department. He is named in his individual capacity.

5. Defendant Putnam County Commission ("PCC") is a political subdivision of the State of West Virginia. *See* West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, *et seq*.

## **FACTS**

6. On December 18, 2016, the plaintiff was at his friend's home. His friend became involved in a domestic dispute with a sibling. The sibling called the police. Plaintiff was a witness to the incident.

7. Plaintiff suffers from epilepsy and is not able to drive. Therefore he walks everywhere he goes.

8. Plaintiff is actively involved in outdoors activities, such as trapping and hunting, and frequently open-carries firearms when he walks places using public

roadways. He also asserts his rights under West Virginia law and federal law to open-carry a firearm for self-protection purposes. Plaintiff is not a prohibited person under state or federal law; nor is he, or was he, prohibited from possessing a firearm at any relevant time. Plaintiff has been lawfully open-carrying firearms for years.

9. When the police arrived at plaintiff's friend's home in Nitro, Putnam County, West Virginia, plaintiff was lawfully and responsibly open-carrying a pistol in a properly secured holster on his hip.

10. Defendant Lovejoy was a police officer who responded to the domestic dispute call at the friend's home.

11. Lovejoy was already at the scene for approximately 30 to 45 minutes before noticing that the plaintiff was open-carrying a pistol.

12. Upon noticing the pistol, the plaintiff was approximately 50 feet away from Lovejoy, and was not causing any problems or safety concerns.

13. Upon noticing the pistol, Lovejoy walked over to the plaintiff and said, "Look at me you stupid son of a bitch, you're putting all of our damned lives at risk because you're carrying a gun." Lovejoy then said he was confiscating the pistol.

14. The plaintiff told him that he didn't want to give him his pistol, and that he would just leave the property.

15. Lovejoy then told the plaintiff that he was not allowed to leave the property due to the fact that plaintiff might sneak around and start shooting at law enforcement.

16. Lovejoy ordered the plaintiff to stand up and put his hands behind his back, which plaintiff did. Then Lovejoy handcuffed plaintiff and arrested him.

17. Lovejoy then began to drag the plaintiff by his arms behind his back, forcing him to walk backwards. He would not allow him to walk forwards. He bent the plaintiff over the hood of a police cruiser.

18. Lovejoy then examined the plaintiff's holster, which was a "Serpa" retention holster, meaning that the pistol is essentially locked into the holster unless a specific button is pushed to allow it to be unholstered. Lovejoy apparently didn't know how to work the holster. He kept attempting to pull the pistol out, and it wouldn't release because he hadn't pressed the button. Another officer then came over and showed Lovejoy how to work the holster, and the pistol was then taken by Lovejoy.

19. Lovejoy then said, "you know what, I'll just go ahead and arrest you for obstruction." Then Lovejoy arrested plaintiff and transported him to jail.

20. Plaintiff was incarcerated in jail all weekend. He did not have his seizure medications during the period of incarceration.

21. Plaintiff got out of jail on Monday. Shortly after his release, due to missing several doses of seizure medications, plaintiff had a severe seizure, and was hospitalized at Teays Valley Hospital. He continued to suffer a period of increased seizure activity due to the incarceration.

22. Deputies employed by PCC continued to harass the plaintiff for open-carrying firearms.

23. On or about February 21, 2018, plaintiff was walking to his friend's house. He was lawfully open carrying an AR-15 rifle strapped to his backpack, and then a backpack on top of the rifle. The barrel was pointed downwards. He was not touching the firearm with his hands. He was planning on checking his coyote traps that day.

24. As plaintiff was walking, two Putnam County deputies approached him in their marked police cruiser, with blue lights flashing. Defendant Pauley, one of the deputies, asked him to step into a nearby driveway. Plaintiff complied and walked into the driveway.

25. The other deputy, Defendant Donahoe, then stepped out of the police cruiser. The plaintiff knew he was about to be harassed for open-carrying a firearm, so he recorded the remainder of the encounter with his cell phone.

26. Donahoe asked plaintiff for his ID. Plaintiff responded, "have I broken any laws?"

27. Donahue stated, "I'm asking you one time, and one time only, if you have ID on you." Plaintiff again replied, "Can I ask you what crime I've committed?" Donahoe said, "I've got the absolute right to ask anybody who they are, and if they have ID; you do not have to break a law for me to ask you who you are."

28. Donahoe forced plaintiff to give him his ID. Defendant Pauley looked on.

29. Donahoe looked at the ID and said "Thank you, Mr. Walker." Then he called in the plaintiff's information to his dispatcher and ran a criminal background check on the plaintiff.

30. Plaintiff then again asked, why did you stop me?

31. Donahoe replied, "People are calling stating you're walking down the road with a gun." Plaintiff responded, "Is that against the law?" Donahoe said, "I understand it's everybody's right to carry a gun." Plaintiff replied, "Then why am I getting stopped? Donahue then said, "I can stop and talk to anybody I want."

32. Plaintiff asked, "Are you detaining me?" Donahoe said, "That's up to you." Plaintiff then stated that, "If it's up to me, then I'm gonna be on my way."

33. Donahoe then stated, "At this point you can be on your way when I tell you you can walk off…. because at this point I have the absolute legal right to see if you are legal to carry that gun or not."

34. During this time the police cruiser was still flashing blue lights, and both Donahoe and Pauley were standing in uniform in front of the plaintiff.

35. Donahoe then asked, "Have you committed any crime that would keep you from owning a firearm?" Plaintiff responded, "No, do you have suspicion that I have committed a crime that would keep me from owning a firearm?" Donahoe replied, "Everybody in the world, no, I have no idea, everybody I come across."

36. Shortly afterwards, the dispatcher provided the criminal history information of the plaintiff to defendant Donahoe, who then had his proof that the plaintiff was not a prohibited person from possessing a firearm.

37. "Everybody in the world I deal with, that has a gun, I check and see whether they have committed a crime, that would keep them from carrying or to possess a gun. If you have not, you can keep going down the road. As for taking that in a store, or going in a store, I would highly advise against it."

38. The officer then said, "Why do you need to carry an AR-15 with you?" Plaintiff responded, "I don't answer questions."

39. Deputy Donahoe then started to ask about the gun, stating, "What is that, a Colt?" Plaintiff responded that he didn't want to answer any questions, or be touched.

40. Donahoe then said, in an extremely aggressive manner, "You know what, I understand the whole sovereign citizen bullshit.[1] Okay? And I've had it up to here with all this, 'I don't have to answer any fucking questions or whatnot…. You make it more fucking difficult for anybody to do their job out here. Listen to me, I like guns too. I'm just kind of curious what you like to carry. I'm making small-talk. Okay? You can do this bullshit all you want…. And I fucking can't stand cocksuckers that do this kind of bullshit that make it more difficult. 'I don't want to answer questions.' That's all I hear all God-damned day."

41. Plaintiff replied, "That's not my fault, sir."

42. Donahoe continued, "It is your fault…. because you cocksuckers start it. When a law enforcement officer asks you for ID, it's not 'I don't have to provide it,' it's, 'here it is sir,' because by law you've fucking got to give it when you are asked for it. And if you think you'll press the issue, we'll find out; I'll hook you, book you, jamb you in the jail, then you can answer to a God damned judge."

43. Plaintiff replied, "I've already been through this situation once," referring to the December 18 arrest. Donahoe responded, "I don't care, you can go through it again…. I can check anybody in the world. If I see you have a gun, I can run your name, check you, and see whether you can possess it or not, and don't tell me that I can't neither, because I do it every day and I arrest people every day for it."

44. Finally the officers allowed the plaintiff to leave, and he then continued walking towards his destination.

---

[1] Plaintiff is not a so-called "sovereign citizen." Plaintiff has no idea what Donahoe was talking about.

**COUNT ONE - UNREASONABLE SEARCH AND SEIZURE**

**IN VIOLATION OF THE FOURTH AMENDMENT - 12/18/16**

45. Plaintiff incorporates by reference all of the previous paragraphs.

46. On or about December 18, 2016, defendant Lovejoy, under color of law, seized the plaintiff and his firearm for lawfully open-carrying a pistol as described above in detail. The specific allegation from Lovejoy was that the plaintiff "refused to temporarily relinquish his firearm for officer safety," as well as the safety of himself and others involved.

47. It is undisputed that a Fourth Amendment search and seizure occurred when the plaintiff was taken into custody and handcuffed, and had his firearm taken by defendant Lovejoy, who was on duty as a Putnam County deputy.

48. It is undisputed that Defendant Lovejoy did not seek, nor did he obtain, a search warrant, nor consent to search or seize the plaintiff on the said date.

49. It is undisputed that the plaintiff was not suspected of having committed any crime on December 18, 2016.

50. It is undisputed that the plaintiff was merely a witness to a domestic altercation on December 18, 2018, and that when he attempted to leave the property, he was not allowed to leave by Defendant Lovejoy.

51. It is undisputed that the plaintiff was arrested by Defendant Lovejoy for obstruction, related to the open-carry of his firearm.

52. It is undisputed that the plaintiff was found not guilty of the charge of obstruction following a trial.

53. There was no legal justification for the search and seizure of the plaintiff on December 18, 2018. He was suspected of no crime. He committed no crime. He took no action which posed a threat to any individual.

54. The plaintiff suffered damages from the violation of his Fourth Amendment rights, for which he is entitled to recover.

**COUNT TWO - UNREASONABLE SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT - FALSE ARREST**

55. Plaintiff incorporates by reference all of the previous paragraphs.

56. On December 18, 2016, Defendant Lovejoy arrested the plaintiff for the crime of "obstruction," related to his open-carrying of a pistol.

57. Defendant Lovejoy seized the plaintiff without a warrant, and without probable cause.

58. The plaintiff had committed no crime, and was lawfully open-carrying a pistol as was his right to do under West Virginia law.

59. At the time of the arrest, the facts and circumstances within Defendant Lovejoy's knowledge were not sufficient to warrant a reasonably prudent person to believe in the circumstances shown that the plaintiff had committed a crime. *See* Caldarola v. Calabrese, 298 F.3d 156 (2d Cir. 2002). Therefore, there was no probable cause present at the time of the arrest. Although in criminal cases the question of whether a police officer had probable cause to make an arrest is a question for the court to decide, there is substantial authority that in § 1983 cases this issue should be submitted to the jury upon proper instructions defining probable cause. Thacker v. City of Columbus, 328 F.3d 244 (6th Cir. 2003); Montgomery v. De Simone, 159 F.3d 120 (3d

Cir. 1998); McKenzie v. Lamb, 738 F.2d 1005 (9th Cir. 1984); Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996).

60. As a result of the arrest, the plaintiff spent the weekend incarcerated, without his seizure medications, resulting in a severe seizure following his release, for which he was hospitalized.

61. The plaintiff was found not guilty of "obstruction" following a trial.

62. The plaintiff suffered damages for which he is entitled to recover.

**COUNT THREE - UNREASONABLE SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT - 2/21/17**

63. The previous paragraphs are hereby incorporated by reference.

64. On or about February 21, 2017, the plaintiff was walking down the side of a public roadway on his way to a friend's house, with plans to go coyote hunting. He was open-carrying an AR-15 style rifle slung over his back, with the barrel pointed downwards, with a backpack attached on top of it. It was clearly visible, and was not readily accessible to the plaintiff. It was situated merely for transportation.

65. As he was walking, two Putnam County Sheriff's Department deputies performed a stop on him with blue lights flashing.

66. At the time plaintiff was stopped, the plaintiff was not suspected of having committed any crime. Nor was any crime suspected to have occurred. He was merely observed walking down a public roadway open-carrying a rifle in a safe manner, as he had been doing for years.

67. The defendant police officers had no indications that the plaintiff was a prohibited person unable to possess a firearm.

68. The defendant police officers had no indications that the plaintiff was dangerous, or a threat to the safety of any individual.

69. The defendant police officers had no reasonable suspicion to believe that the plaintiff had committed any crime.

70. The defendant police officers had no probable cause to believe that the plaintiff had committed any crime.

71. Nevertheless, the two uniformed police officers seized the plaintiff. Defendant Donahoe communicated to the plaintiff during the stop that the plaintiff was not free to leave unless and until Defendant Donahoe said he could leave.

72. Defendant Donahoe forced the plaintiff to provide his ID, which promptly was made subject to a criminal history search over the radio, while the plaintiff was forced to wait. Defendant Donahoe held onto the ID.

73. While plaintiff was seized, and waiting for the background check, he was called a "fucking cocksucker" by Defendant Donahoe, and accused of being a "sovereign citizen," among other things.

74. During this seizure, Defendant Pauley was watching, and took no action in response to the actions of Defendant Donahoe.

75. Defendant Donahoe then proceeded to lecture the plaintiff on what he believed to be the law, and explained that he engages in a pattern and practice of civil rights violations against anyone he sees with a firearm - whether lawfully carried and possess, or not.

76. However, Fourth Circuit case law has long been clear that Defendant Donahoe was totally without legal justification for his actions.

77. Although brief encounters between police and citizens require no objective justification, United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002), it is clearly established that an investigatory detention of a citizen by an officer must be supported by reasonable articulable suspicion that the individual is engaged in criminal activity. Terry v. Ohio, 392 U.S. at 21, 88 S.Ct. 1868 (1968).

78. An individual is “seized” within the meaning of the Fourth Amendment when either he is told that he is not free to leave, or when, “in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” United States v. Gray, 883 F.2d 320, 322 (4th Cir. 1989).

79. Not only was the plaintiff told he could not “be on his way,” but any reasonable person under his circumstances would have believed he was not free to leave. This resulted from being confronted by two uniformed police officers with flashing blue lights, who asked the plaintiff to step into a driveway to talk, and who used language and tone of voice indicating that compliance was compelled, as well as the forced confiscation of plaintiff’s identification. The ID was only returned at the very end of the seizure.

80. To be lawful, a Terry stop “must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity.” Reid v. Georgia, 448 U.S. 438, 440, 100 S. Ct. 2752 (1980). The level of suspicion must be a “particularized and objective basis for suspecting the particular person stopped of criminal activity.” United States v. Griffin, 589 F.3d 148, 152 (4th Cir. 2009). As such, “the officer must be able to point to specific and articulable facts which, taken together

with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21, 88 S. Ct. 1868.

81. Moreover, the Fourth Circuit has already made it very clear that in states where open carry is legal, such as West Virginia, if officers have no *individualized* information that a particular individual who is lawfully open-carrying is a prohibited person, the mere exercise of their rights by open-carrying "cannot justify an investigatory detention." Indeed, the Court held that "Permitting such a justification would eviscerate Fourth Amendment protections for lawfully armed individuals in those states." United States v. Black, 707 F.3d 531, 540 (2013) (*quoting* United States v. King, 990 F.2d 1552, 1559 (10th Cir. 1993)).

82. There was no legal basis for the seizure and investigatory detention of the plaintiff on or about February 21, 2017, as described above. No objectively reasonable police officer would have reason to believe they have authority to conduct a seizure or investigatory detention of a person lawfully open-carrying a firearm in West Virginia. The defendants' actions as alleged herein were done under color of law, objectively unreasonable, willful, wanton, intentional and done with a callous and reckless disregard for the plaintiff's rights to open carry a firearm in West Virginia.

83. Plaintiff has suffered damages for which he is entitled to recover.

**COUNT FOUR - BYSTANDER LIABILITY - 2/21/17**

84. Plaintiff incorporates by reference the previous paragraphs.

85. On February 21, 2017, Defendant Pauley possessed a realistic opportunity to intervene to prevent the harm from occurring to the plaintiff, as described in Count Three above, and chose not to act, the plaintiff hereby makes a claim against

him pursuant to 42 U.S.C. 1983 under Randall v. Prince George's County, Md., 302 F.3d 188 (4th Cir. 2002).

**COUNT FIVE - MUNICIPAL LIABILITY / MONELL CLAIM**

**UNDER 42 U.S.C. 1983 (Both 12/18/16 and 2/21/17)**

86. Plaintiff incorporates by reference the previous paragraphs.

87. The PCC has an official policy, custom and practice of violating the rights of law-abiding citizens in West Virginia who are lawfully carrying, or in possession of a firearm.

88. Defendants Lovejoy, Donahoe, and Pauley, acted in furtherance of that said official policy, custom and practice when they deprived the plaintiff of his rights as described above, by seizing and arresting him on December 18, 2016, and by seizing him on or about February 21, 2017. Defendant Donahoe admitted on the video recording of the seizure that he did the same to every individual he sees with a firearm - whether they are suspected of a crime, or not, which is a blatant violation of Fourth Circuit case law, as well as U.S. Supreme Court case law.

89. Upon information and belief, and according to the admissions of Defendant Donahoe, PCC employees have committed numerous other civil rights violations involving the deprivation of firearm rights in the State of West Virginia.

90. As a direct and proximate result of the said policy, custom and practice, the plaintiff was damaged on December 18, 2016, and again on February 21, 2017, as described above in detail, for which he is entitled to recover.

**PRAYER**

WHEREFORE, based on the above stated facts, the Plaintiff respectfully requests that this Honorable Court award:

1. Damages against the Defendants in an amount to be determined at trial which will fairly and reasonably compensate the Plaintiff for:

a. Past, present and future medical expenses;

b. Past, present and future pain and suffering;

c. Loss of enjoyment of life;

d. Psychological and emotional distress;

e. Any other compensatory damages to be proven at trial;

f. Punitive damages against the individual Defendants in an amount to be determined at trial;

g. Reasonable attorney fees and costs;

h. Any other relief that this Court deems is just and fair;

i. All other damages provided by law;

j. Injunctive relief requiring appropriate training, supervision and discipline in order to remedy all constitutional deprivations which the Plaintiff suffered;

k. Declaratory judgment relief establishing the Defendants' above-described conduct violates the Plaintiff's clearly established constitutional rights.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

MICHAEL WALKER
By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEYS AT LAW
611 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

for the Plaintiff