**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**MICHAEL WALKER, individually,**

  **Plaintiff,**

**v.**                                                  **Civil Action No. 3:18-cv-01523
Honorable Robert C. Chambers**

**M.H. LOVEJOY, in his individual capacity;
B.E. DONAHOE, in his individual capacity;
B.W. PAULEY, in his individual capacity;
PUTMAN COUNTY COMMISSION, a
political subdivision of the State of West
Virginia,**

  **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' PARTIAL MOTION TO DISMISS</u>**

**COME NOW** the Defendants, M. H. Lovejoy, B. E. Donahoe, B. W. Pauley, and the Putnam County Commission (the "Commission"), by counsel Charles R. Bailey, John P. Fuller, Adam K. Strider, and the law firm of Bailey & Wyant, PLLC, and in support of their contemporaneously-filed Partial Motion to Dismiss offer the following Memorandum of Law.

**I. STATEMENT OF THE CASE**

The Plaintiff's alleged cause of action is supported by two separate incidents.  In the first, which took place on December 18, 2016, the Plaintiff claims that he was a bystander to a domestic disturbance between one of the Plaintiff's friends, and one of that friend's relatives.  In the second, which took place on February 21, 2017, the Plaintiff was stopped while open-carrying a rifle for a brief background check as to whether he could legally possess a firearm.

This domestic disturbance was investigated by Deputy Lovejoy, who, in the course of his

investigation, noticed that the Plaintiff was openly carrying a handgun. Deputy Lovejoy ordered the Plaintiff to turn over his firearm for the remainder of the interaction, with a promise to return it at the conclusion. When the Plaintiff refused to consent to the protective weapons frisk and attempted to leave the area still armed, Deputy Lovejoy confiscated the firearm and arrested the Plaintiff for Obstructing an Officer. The Plaintiff was later acquitted of this charge by a jury. Based on this incident, the Plaintiff has alleged constitutional violations against Deputy Lovejoy under 42 U.S.C. § 1983 for unlawful search and seizure and false arrest, as well as a claim for municipal liability against the Commission.

In the second incident, the Plaintiff was walking down the road armed, openly carrying an AR-15 style rifle. Deputies Donahoe and Pauley stopped the Plaintiff and asked him for identification to run a criminal background check and determine whether he was a person prohibited from firearm ownership. After initially resisting, the Plaintiff agreed and provided identification. The Deputies determined that the Plaintiff was not prohibited from firearm ownership, after which he was permitted to leave. He claims that Deputy Donahoe carried out the stop, and that Deputy Pauley was present and did not act to intervene. Based on this interaction, the Plaintiff has alleged a claim against Deputy Donahoe for unlawful search and seizure, and against Deputy Pauley for bystander liability. He also claims that, in the course of this interaction, Deputy Donahoe indicated that he routinely stops persons who are openly carrying firearms to determine whether they are prohibited from firearm ownership, and alleges a claim for municipal liability against the Commission on that basis.

## II. STANDARD OF REVIEW

"In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would

entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (1993) (citing *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991)). Nonetheless, the Fourth Circuit has noted, "[t]he court need not, however, accept unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "The inclusion of conclusory legal terms, however, does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint do not support the legal conclusion, 'since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint.'" *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir.1994); *Trulock v. Freeh*, 275 F.3d 391, 405, n. 9 (4th Cir.2001)).

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court follows a two-step approach: (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and then (2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal* at 679.

For the second step, a court must take the remaining factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. See *Twombly* at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks omitted).

### III. ARGUMENTS

**A. Deputy Lovejoy is entitled to qualified immunity regarding the December 16, 2018 incident.**

**1.  Standards for applying qualified immunity.**

"Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rish v. Johnson*, 131 F.3d 1092, 1094 (4th Cir. 1997). Qualified immunity exists to protect officers in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000).

In ruling on an issue of qualified immunity, a court must consider a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. *Id*. If, on the other hand, a violation can be shown, then the court must

4

determine whether the right was ***clearly established*** in the specific context of the case. *See id*. (Emphasis added).

However, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that courts may decide to address whether the right is clearly established first. The Pearson Court noted that the doctrine of qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson* at 230.

The U.S. Supreme Court has long emphasized that qualified immunity is designed "to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009). "The entitlement [to qualified immunity] is an immunity *from suit* rather than a mere defense to liability[.]" *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S. Ct. 684 (1993). "Unless a plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Cloaninger v. McDevitt*, 555 F.3d 324, 331 (4th Cir. 2009).

**2. Deputy Lovejoy is entitled to qualified immunity from Plaintiff's unlawful search and seizure claims.**

The Plaintiff's allegations regarding Deputy Lovejoy's attempt to remove his weapon in the course of adjudicating a domestic dispute describe a situation in which qualified immunity clearly applies. The Plaintiff claims that the search at issue was illegal because Deputy Lovejoy had no basis to believe the Plaintiff's possession of a firearm during that domestic disturbance was illegal. However, prior Fourth Circuit case law has expressly provided that a weapons search for officer safety does not require a suspicion that the specific individual searched is engaged in illegal activity. Thus, this interaction constituted a legally justified *Terry* frisk, which, as will be discussed in a

5

forthcoming section, the Plaintiff willfully obstructed. If no constitutional violation occurred, a law enforcement official is undoubtedly entitled to qualified immunity. See, e.g., *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

This question, and a legally equivalent situation, was addressed by the Fourth Circuit sitting *en banc* in *United States v. Robinson*, 846 F.3d 694 (2017) (en banc). Therein, police responded to a tip that an individual had loaded and concealed a firearm and gotten into a vehicle in a parking lot known for drug deals. See *id.* at 695. The police stopped the vehicle in question after observing that the persons inside were not wearing seatbelts. See *id.* Based on their belief that the passenger of that vehicle was armed, they initiated a *Terry* search, and removed a pistol from the passenger's person. See *id.* After running a criminal background check, the passenger was arrested on a charge of possession of a firearm by a felon. See *id.*

The passenger contested the charge by claiming that the police's search was unjustified, because the tip did not report any illegal conduct. See *id.* at 696. West Virginia law provides for the legal carrying, both concealed and open, of firearms, and the police at the search had no basis, at the time they conducted the frisk, to believe that his possession of a firearm was unlawful. See *id.* The passenger's argument was that, "Under the logic of the district court, in any state where carrying a firearm is a perfectly legal activity, every citizen could be dangerous, and subject to a *Terry* frisk and pat down." *Id.* The *Robinson* Court was unpersuaded by the passenger's argument, reasoning as follows:

> We reject Robinson's argument and affirm, concluding that an officer who makes a lawful traffic stop and who has a reasonable suspicion that one of the automobile's occupants is armed may frisk that individual for the officer's protection and the safety of everyone on the scene. See *Pennsylvania v. Mimms*, 434 U.S. 106, 112, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977) (per curiam). The Fourth Amendment does not "require . . . police officers [to] take unnecessary risks in the performance of their duties." *Terry v. Ohio*, 392 U.S. 1, 23, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). And it is inconsequential that the person thought to be armed was a passenger. See *Maryland*

6

*v. Wilson*, 519 U.S. 408, 414, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997). It is also inconsequential that the passenger may have had a permit to carry the concealed firearm. ***The danger justifying a protective frisk arises from the combination of a forced police encounter and the presence of a weapon, not from any illegality of the weapon's possession.*** See *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972); *Michigan v. Long*, 463 U.S. 1032, 1052 n.16, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983).

*Id.* (Emphasis added).

A protective frisk for weapons in an otherwise proper law enforcement encounter is legally justified when the officer has a reasonable suspicion that the person in question is both armed and presents a danger to the officer and those around. See *Arizona v. Johnson*, 555 U.S. 323, 326-27, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). This is not limited to persons actually suspected of criminal activity. Federal courts have routinely held that it is permissible for officers to require passengers of stopped vehicles to remain in the car during the traffic stop, and to frisk those passengers for weapons, even when it is solely the driver who is suspected of criminal activity. See *Robinson* at 698; see also *Coffey v. Morris*, 401 F. Supp. 2d 542, 545 (W.D.Va. 2005) (collecting cases). This is because the burden involved on the passenger's liberty was a "minimal intrusion," and the "strong public interest in officer safety outweighed the liberty interest of the passenger." See *id.* (quoting *Maryland v. Wilson*, 519 U.S. 408, 413, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997)). This is in part because the "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." See *Wilson* at 414.

The situation in which Deputy Lovejoy found himself, according to the Plaintiff's Complaint, is analogous to that at issue in *Robinson* and similar traffic stop cases. Domestic disputes are statistically even more dangerous for police officers than traffic stops.[1] The Plaintiff, as a bystander

---

1 In 2017, more officers were shot responding to domestic violence than any other type of firearm-related fatality, according to the National Law Enforcement Officers Memorial Fund. From 1988 to 2016, 136 officers were killed while responding to domestic disturbances. Schreyer, Natalie, *Domestic abusers: Dangerous for women — and lethal for cops*,

7

and witness to the domestic disturbance, is analogous to a passenger in a traffic stop; they are not necessarily suspected of criminal activity themselves, but present for the event nonetheless, and present a danger to investigating police officers if they are armed. Therefore, like a passenger in a traffic stop, bystanders to domestic disputes can justifiably be ordered to remain where they are, and be protectively frisked for weapons.

In this case, the reasonable suspicion that the Plaintiff was armed was obvious: he was openly carrying a pistol. Further, as discussed in *Robinson*, *supra*, the Plaintiff being armed in the midst of the investigation of a law enforcement encounter involving a high degree of risk presented a danger to the officer present in and of itself, and that danger did not depend on the weapon being unlawfully possessed. Accordingly, Deputy Lovejoy's frisk for and removal of Plaintiff's firearm for the duration of the investigation was lawful, which inarguably entitles Deputy Lovejoy to qualified immunity.

Even if this Court were to rule that Deputy Lovejoy lacked objective reasonable suspicion in this instance, he is nonetheless entitled to qualified immunity. It was reasonable, and in the interests of his personal safety and that of those around him for Deputy Lovejoy to order that the Plaintiff submit to a protective frisk and turn over the firearm that he was openly and obviously carrying during a high-intensity law enforcement confrontation involving a domestic dispute. Plaintiff's claim to the contrary should be held unavailing, and must be dismissed.

### 3. Deputy Lovejoy is entitled to qualified immunity from Plaintiff's false arrest claims.

The Plaintiff's false arrest claim must fail, because he was arrested with probable cause,

---

USA Today Online (Apr. 9, 2018, 6:00 AM), https://www.usatoday.com/story/news/nation/2018/04/09/domestic-abusers-dangerous-women-and-lethal-cops/479241002/.

which is dispositive in favor of qualified immunity. "To demonstrate false arrest under either federal or state law, a plaintiff must show that he was arrested without probable cause." *Smith v. Murphy*, 634 Fed. Appx. 914, 917 (4th Cir. 2015) (citing *Brown v. Gilmore*, 278 F.3d 362, 367-68 (4th Cir. 2002)). Probable cause exists when the facts and circumstances within an officer's knowledge, and of which they had reasonably trustworthy information, are "sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964); see also *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984).

In this case, the facts demonstrating Deputy Lovejoy's probable cause to make the arrest appear on the face of the Plaintiff's Complaint. The Plaintiff was arrested for Obstructing an Officer. The relevant statute states as follows:

> A person who by threats, menaces, acts or otherwise forcibly or illegally hinders or obstructs or attempts to hinder or obstruct a law-enforcement officer, probation officer or parole officer acting in his or her official capacity is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $50 nor more than $500 or confined in jail not more than one year, or both fined and confined.

W. Va. Code § 61-5-17(a). As stated above, Deputy Lovejoy was at the time of the incident attempting to conduct a lawful *Terry* protective frisk to remove a weapon from a dangerous law enforcement confrontation, which is an act in his official capacity as a law enforcement officer. It is reasonable for him to believe that refusal to cooperate with that law enforcement function is an obstruction of an officer. Further, the West Virginia Supreme Court of appeals has affirmed the reasonability of this belief, previously stating in *City of St. Albans v. Botkins*, 228 W. Va. 393, 719 S.E.2d 863 (2011), that "once [the plaintiff] refused to comply, a reasonable officer may have believed the refusal to be an attempt to obstruct the officer from performing an investigation to

determine whether any criminal activity was involved." *Botkins* at 402.

The fact that the Plaintiff was acquitted at trial does not indicate a lack of probable cause. "[N]either subsequently dropped charges nor an acquittal indicate a lack of probable cause for an arrest." *McAtee v. Toothman*, No. 1:13-cv-18, 2013 U.S. Dist. LEXIS 92837, *35 (N.D.W.Va., June 12, 2013) (Kaul, M.J.), *adopted*, 2013 U.S. Dist. LEXIS 92835, 2013 WL 3328912 (N.D.W.Va., July 2, 2013) (Keeley, J.); see also *Western Union Tel. Co. v. Thomasson*, 251 F. 833 (4th Cir. 1918) ("[A]cquittal, dismissal, and abandonment are equally inadmissible to prove lack of probable cause…"); *Jones v. Target Corp.*, 341 F. Supp. 2d 583, 592 (E.D.Va. 2004) ("Although… a conviction is conclusive evidence of probable cause, it is a logical fallacy to reason that this proposition requires the converse conclusion that an acquittal is conclusive evidence of a lack of probable cause."). Accordingly, when the Plaintiff willfully refused to submit to the protective frisk, Deputy Lovejoy obviously had sufficient information to reasonably believe the Plaintiff was committing the crime described in the stated cited *supra*. The Plaintiff's subsequent acquittal does nothing to change that fact.

However, even if this Court were to rule that the arrest was made without probable cause, qualified immunity would still apply. The Defendants have located no prior ruling stating that a willful refusal to comply with a *Terry* frisk does not create a reasonable belief that West Virginia's Obstructing an Officer statute has been violated, and the aforementioned prior case law in fact suggests the opposite. Further, absent such guiding precedent to the contrary, it is objectively reasonable for a law enforcement officer to believe that a protective Terry frisk is an act in within that officers official capacity, and that a willful refusal to cooperate is an obstruction of that process. Accordingly, qualified immunity nonetheless attaches to Deputy Lovejoy's actions, warranting dismissal of this claim.

    **B. The Plaintiff's *Monell* claims against the Commission fail to state a claim, because the Plaintiff has failed to allege the existence of a municipal policy that caused the alleged injuries.**

    **1.     Statement of applicable law.**

The Commission, as a municipal government entity, cannot be held liable for the alleged actions of its employees under a theory of *Respondeat Superior*. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. In this matter, even though the Plaintiff's Complaint makes conclusory allegations of a policy or custom, the face of the Complaint is based purely upon allegations of purported tortious conduct by two individual deputies.

In *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989), the Supreme Court of the United States addressed the dimensions of municipal liability for failure to train or supervise resulting in an alleged violation of 42 U.S.C. § 1983, as the Plaintiff has claimed in her First Amended Complaint. The Supreme Court ruled that a claim of inadequate training will trigger municipal liability only where "the failure to train amounts to ***deliberate indifference to the rights***" of the individuals who will come into contact with those employees. *Id*. at 388 (Emphasis added). In so ruling, the Supreme Court explained that "deliberate indifference" required that policymakers made a "deliberate choice . . . from among various alternatives" not to train their employees properly.

*Id*. at 389. That choice is present where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been ***deliberately indifferent to the need***." *Id*. (Emphasis added). Further, such a claim is only valid where "the inadequate training actually caused a claimed injury." *Revene v. Charles County Commissioners*, 882 F.2d 870, 875 (4th Cir. 1989).

As the U.S. Court of Appeals for the Fourth Circuit held in *Revene*, claims of this type fail where the "critical allegations of a municipal policy of inadequate training are asserted entirely as legal conclusions," and "there are not supporting facts of even the most general nature to suggest any specific deficiencies" in said training. *Revene* at 875. "§ 1983 complaints which on critical elements of a claim merely recite legal conclusions wholly devoid of facts may properly be dismissed for insufficiency of statement." *Id*. (quoting *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985)). Further, "[a] single act of the type here alleged cannot suffice, standing alone, to establish the existence of such a policy." *Id*. (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824, 105 S. Ct. 2427 (1985)).

The federal district courts in West Virginia have followed the 4th Circuit's lead in this arena. In *Rankin v. Berkeley County Sheriff's Dep't*, 222 F. Supp. 2d 802 (N. D. W. Va. 2002) (Broadwater, J.), the U.S. District Court for the Northern District of West Virginia dismissed a similar failure to train claim as it applied to the Berkeley County Council on these grounds. In so doing, the Court held both that the plaintiff therein had failed to sufficiently plead the existence of a policy, and had failed to identify more than a single instance of this allegedly unconstitutional conduct, as follows:

> Plaintiff claims the Berkeley County Commission is liable in this matter for, among other things, their "failing to require the Defendant Berkeley County Sheriff's Department to seek out, negate and prevent the execution of any policy or agreement, written or unwritten, wherein its members physically assault and beat up any person

12

> accused of a criminal offense." The allegations in this matter fail to adequately plead a "policy" of inadequate training, supervising and hiring. The bold assertions and conclusory statements made by plaintiff in his complaint do not state a claim. At no time has plaintiff identified an actual policy regarding the hiring, supervising, and training of the deputies. Likewise, plaintiff fails to identify other people harmed by the alleged "policy" and "proof of a single incident of the unconstitutional activity charged is not sufficient to prove the existence of a municipal custom."

*Id*. at 807. More recently, the same ruling was echoed by that Court in *O'Connor v. Berkeley County Council*, 3:18-CV-182, Doc. 11 (N.D.W.Va., Dec. 17, 2018) (Groh, J.) (Attached). The plaintiff therein alleged false arrest claims against certain Berkeley County Deputy Sheriffs allegedly due to a negligently-performed investigation or a refusal to investigate, and claimed that such failures were the result of a policy of inadequate training by the Berkeley County Council. In dismissing her Complaint as it applied to the County Council, the Court reasoned as follows:

> [T]he Plaintiff formulaically recites the elements and offers no factual basis for her claims. There are not supporting facts of even the most general nature to suggest any specific deficiencies in training… [n]either are there any allegations of any developed practice or custom of comparable conduct that might be charged to the deliberate indifference of municipal policy-making authorities. When a plaintiff alleges nothing more than a municipality's adherence to an impermissible custom, the complaint must be dismissed.

*O'Connor* at *8 (Internal citations and quotations omitted). The *Monell* claims asserted by the Plaintiff herein demand similar treatment.

### 2. Deputy Lovejoy's actions, as alleged under Counts I and II do not support a *Monell* claim, because no violation occurred.

"It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013). "[I]f the [officer] inflicted no constitutional injury on respondent, it is inconceivable that [the department] could be liable… If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the [alleged constitutional injury] is quite beside the point…" *Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.

13

Ct. 1571, 89 L. Ed. 2d 806 (1986). As previously discussed at length in Sections III.A and III.B of this Memorandum, Deputy Lovejoy committed no constitutional violation against the Plaintiff, which is also dispositive of any municipal liability based on those alleged actions. Therefore, this aspect of Plaintiff's claim should be dismissed.

### 3. Plaintiff has failed to state a claim for *Monell* liability based on the alleged actions of Deputies Donahoe and Pauley under Counts III and IV.

As discussed above, a *Monell* claim requires allegations regarding the specific policy, consciously chosen from among alternatives, by the relevant policymakers. The actions of individual law enforcement officers do not give rise to a *Monell* claim, because political subdivisions are not vicariously liable for alleged civil rights violations committed by their employees. The Plaintiff has failed to allege facts supporting the existence of a policy that would satisfy *Monell*.

Plaintiff's Complaint does not allege facts regarding a policy of the Putnam County Commission beyond only conclusory allegations; only facts regarding an alleged practice by Deputy Donahoe. The only allegations stated in the Complaint concerning the purported policy are that "[t]he [Commission] has an official policy, custom and practice of violating the rights of law-abiding citizens in West Virginia who are lawfully carrying, or in possession of a firearm." Doc. 1 at ¶ 87. No allegations are made regarding what the policy is, who implemented it, or any other instances of injuries caused by this alleged policy.

The only fact the Plaintiff offers in support of the existence of the alleged policy does not lend any such support: Deputy Donahoe's alleged representation that he routinely stops individuals carrying firearms to check whether they are permitted to carry one. See Complaint at ¶ 43. There is no allegation that Deputy Donahoe indicated that he was acting pursuant to official policy; merely an allegation that he stated this to be his personal custom. Because the actions of a single law enforcement officer are inadequate to establish a municipal policy under *Monell*, this allegation does

14

nothing to establish its existence, leaving us with only the bare-bones, conclusory allegations found repeatedly to be inadequate under the *Monell* standard.  Accordingly, Plaintiff has failed to state a claim against the Commission, and dismissal of this claim is warranted.

## IV. CONCLUSION

**WHEREFORE**, based on the foregoing, these Defendants respectfully pray that this Honorable Court GRANT their Partial Motion to Dismiss, and remove the claims discussed herein from the docket.  Further, as all claims against Deputy Lovejoy included in the Complaint are subject to this Motion, Deputy Lovejoy hereby moves that that he be dismissed as a defendant in this civil action.

**M.H. LOVEJOY, B.E. DONAHOE, B.W. PAULEY, and PUTMAN COUNTY COMMISSION,**

**By Counsel,**

 /s/ John P. Fuller
**Charles R. Bailey (WV Bar #0202)**
**John P. Fuller (WV Bar #9116)**
**Adam K. Strider (WV Bar #12483)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia  25337-3710**
**T: 304.345.4222**
**F: 304.343.3133**
**cbailey@baileywyant.com**
**jfuller@baileywyant.com**
**astrider@baileywyant.com**

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**MICHAEL WALKER, individually,**

   **Plaintiff,**

   **v.**                                    **Civil Action No. 3:18-cv-01523
Honorable Robert C. Chambers**

**M.H. LOVEJOY, in his individual
capacity; B.E. DONAHOE, in his
individual capacity; B.W. PAULEY, in his
individual capacity; PUTMAN COUNTY
COMMISSION, a political subdivision of
the State of West Virginia,**

   **Defendants.**

## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that a true and correct copy of foregoing "**Memorandum of Law in Support of Defendants' Partial Motion to Dismiss**" was served upon the following parties through the Court's Electronic Case Filing (ECF) system on this day, Friday, February 8, 2019:

John H. Bryan, Esq.
Law Office of John H. Bryan
611 Main Street
PO Box 366
Union, WV  24983
*Counsel for Plaintiff Michael Walker*

  **/s/ John P. Fuller**
**Charles R. Bailey (WV Bar #0202)
John P. Fuller (WV Bar #9116)
Adam K. Strider (WV Bar #12483)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia  25337-3710
T: 304.345.4222
F: 304.343.3133
cbailey@baileywyant.com
jfuller@baileywyant.com
astrider@baileywyant.com**