IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**MICHAEL WALKER, individually,**

  Plaintiff,

v.	Civil Action No. 3:18-cv-01523
	Honorable Robert C. Chambers

**M.H. LOVEJOY, in his individual capacity;**
**B.E. DONAHOE, in his individual capacity;**
**B.W. PAULEY, in his individual capacity;**
**PUTMAN COUNTY COMMISSION, a political subdivision of the State of West Virginia,**

  Defendants.

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**COME NOW** the Defendants, Corporal Brian E. Donohoe ("Cpl. Donohoe") and Deputy Brandon W. Pauley ("Dep. Pauley"), by counsel Charles R. Bailey, Adam K. Strider, and the law firm of Bailey & Wyant, PLLC, and hereby respond to the Plaintiff's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as follows.

### I. STATEMENT OF FACTS

The Defendants herein incorporate the "Statement of Facts" section of the Memorandum in Support of Defendants' Motion for Summary Judgment. See ECF Doc. No. 34 at pgs. 1-6.

### II. STANDARD OF REVIEW

Summary judgment is governed by Rule 56 of the *Federal Rules of Civil Procedure*, which provides, in pertinent part, as follows:

The judgment sought shall be rendered forthwith if the pleadings, depositions,

1

> answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Moreover, the rule also provides, in relevant part, as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).  In discussing this standard, the U.S. Supreme Court stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).

"In assessing a motion for summary judgment all justifiable inferences must be drawn in favor of the nonmoving party for 'credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts.'" *Drewitt v. Pratt*, 999 F.2d 774, 778 (4th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Hence, "the court 'must perform a dual inquiry into the genuineness and materiality of any purported factual issues.'" *Drewitt* at 778 (quoting *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985)).

The substantive law identifies facts that are material. Consequently, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgement. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson* at 248. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross* at 364. Therefore, in reviewing the evidence, a judge must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson* at 252. If no genuine issue of material fact exists, the Court has an obligation "to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex* at 323-24).

Finally, when a party's "state of mind" is a decisive element of a claim or defense, summary judgment is seldom appropriate because "state of mind" determinations usually depend on the credibility of witnesses or the resolution of conflicting inferences drawn from circumstantial or self-serving evidence. *Thacker v. Peak*, 800 F. Supp. 372, 376 (S.D.W.Va. 1992) (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979) and *Ross* at 364)). Nevertheless, even if motive is material, summary judgment is not precluded if the claim rests solely on unsupported allegations. *Id.* (citing *Ross* at 365).

### III. ARGUMENTS

#### A. Statement of the law on qualified immunity.

Under the doctrine of qualified immunity, law enforcement officers performing discretionary duties "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Qualified immunity protects government officials from civil damages in § 1983 actions "insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* at 818 (internal citations omitted).

The qualified immunity defense requires a two-step analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first question is whether "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." *Id*. If no violation occurred, the analysis ends, and the plaintiff cannot prevail. See *id*. If the Court finds a violation may have occurred, the Court must consider whether the constitutional right was "clearly established," meaning "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 201–02 (citation omitted). The "clearly established" standard ensures officers are only liable "for transgressing bright lines" and not for "bad guesses in gray areas." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (internal citations omitted); see also *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 909 (4th Cir. 2016) (holding officers' conduct violated the Fourth Amendment, but qualified immunity applied because the right at issue was not clearly established).

> **B. The Plaintiff is not entitled to summary judgment, because the record of the case does not establish as a matter of law that that a constitutional violation occurred.**

As discussed in the corresponding section of the Memorandum in Support of Defendants' Motion for Summary Judgment, it is the primary position of the Defendants that they are themselves entitled to Summary Judgment as to § 1983 claims, because the undisputed facts on the record show that, as matter of law, Cpl. Donohoe's stop of the Plaintiff was legal. See ECF Doc. No. 34 at pgs. 9-17. The stop fell under both the categories of a valid investigatory stop, and a valid community caretaking function. See *id*. The Defendants herein incorporate the arguments made therein as to why the Plaintiff is not entitled to summary judgment. However, even if this Court finds the

4

Defendants are not entitled to summary judgment on this question, there are facts on the record which could, at minimum, lead a reasonable jury to find that reasonable suspicion existed, or that circumstances existed which rendered the Defendants' action a valid community caretaking function.

> **1. At minimum, a reasonable jury could find that the officers had reasonable suspicion for a valid investigatory stop of Mr. Walker.**

Based on the facts available to the officers at the time of the stop, at minimum, a reasonable jury could find that the officers possessed sufficient reasonable suspicion for a brief investigatory stop. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. This Court expounded on the legal framework governing the relevant Fourth Amendment analyses in a prior Order in this matter, as follows:

> The "touchstone" of any Fourth Amendment analysis is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977) (citing *Terry v. Ohio*, 392 U.S. 1, 19, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). To be reasonable, a warrantless investigatory stop generally requires "a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000) (citing *Terry*, 392 U.S. at 30). Reasonable suspicion requires officers to "have a particularized and objective basis for suspecting the particular person stopped of criminal activity," for "[t]here is no reasonable suspicion merely by association." *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *United States v. Black*, 707 F.3d 531, 539-40 (4th Cir. 2013). **Reasonable suspicion considers the "totality of the circumstances," which includes the "various objective observations" from which an officer can make deductions.** *Cortez*, 449 U.S. at 417-18.

*Walker v. Lovejoy*, CIVIL ACTION NO. 3:18-1523, 2019 U.S. Dist. LEXIS 166458, 2019 WL 4741709, *6-*7 (S.D.W.Va., Sept. 27, 2019) (Emphasis added).

The Plaintiff's argument that the stop constituted a Fourth Amendment violation as a matter

Case 3:18-cv-01523 Document 38 Filed 12/27/19 Page 6 of 18 PageID #: 296

of law relies on improperly framing the central questions of the inquiry, and focusing on aspects of the interaction which are not central to the relevant analyses. Rather than an objective, totality of the circumstances analysis, the Plaintiff urges the Court to hyper-focus on the facial legality of openly carrying firearms in West Virginia, and speculation about the officers' own purported subjective beliefs about whether reasonable suspicion existed, to the exclusion of all else.1

As an initial point, the subjective beliefs of the officers are irrelevant to the question of whether reasonable suspicion exists. As the Fourth Circuit stated in *United States v. Foreman*, 369 F.3d 776 (4th Cir. 2004):

> Because reasonable suspicion is an objective test, we examine the facts within the knowledge of [the officer] to determine the presence or nonexistence of reasonable suspicion; ***we do not examine the subjective beliefs of [the officer] to determine whether he thought the facts constituted reasonable suspicion.*** Additionally, it must be noted that, because the *Terry* reasonable suspicion standard is a commonsensical proposition, courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street.

*Id.* at 781-782 (Emphasis added). Therefore, the Plaintiff's arguments which address whether Cpl. Donohoe personally believed he had reasonable suspicion to stop Mr. Walker are inapposite. The question is whether the totality of the facts known to the officers at the time of the stop give rise to a reasonable suspicion of criminal activity sufficient to justify a brief, minimally invasive stop and identification check. To that end, the Plaintiff's Memorandum notably omits the most significant among those facts.

The Plaintiff's filings neglect to mention that at the time of the stop, Mr. Walker was less than a mile from Teays Valley Christian School, and was walking in the direction of the school. Exhibit 1, *Depo. of Brian Donohoe*, Pg. 22, Lines 1-16; Exhibit 2, *Depo. of Brandon Pauley*, Pg. 16, Lines 12-20; Exhibit 3, *Depo. of Michael Walker*, Pg. 31, Lines 7-10. This occurred on a

---

1 As noted in the Standard of Review section, any resort to factual speculation, about the officers' subjective motives or otherwise, defeats the Plaintiff's instant motion in and of itself.

Wednesday morning, when school was in session.  The officers also testified that their concern regarding Mr. Walker's conduct was heightened because the interaction occurred seven (7) days after the nationally-covered school shooting in Parkland, Florida, putting them on a heightened alert for copycat crimes.  *Depo. of Brandon Pauley*, Pg. 16, Line 11 – Pg. 17, Line 7; *Depo. of Brain Donohoe*, Pg. 22, Line 1 – Pg. 23, Line 5.  Given these facts, known to the officers at the time, a reasonable jury could, and likely would, conclude that the totality of these circumstances justified a reasonable suspicion that Mr. Walker may have been engaged in an attempt to commit a violent crime.

A similar situation was addressed by the U.S. District Court for the Middle District of Pennsylvania in *Banks v. Gallagher*, 686 F.Supp.2d 499 (M. D. Pa. 2009).  In *Banks*, a group of several armed persons, some openly carrying firearms and some carrying concealed firearms, entered the "Old Country Buffet," a restaurant in Dickson City, Pennsylvania.  See *id*. at 513.  Several restaurant patrons, unnerved by the situation, called 9-1-1.  See *id*.  When law enforcement arrived, they approached the plaintiff, as with the other armed persons.  See *id*.  They asked for his identification, which the plaintiff interpreted as a demand, and he complied.  See *id*.  The police then ran his ID, and returned it to him.  See *id*.  Just as in this case, Pennsylvania is an open carry state, and the plaintiff therein alleged that the facial legality of carrying firearms rendered the alleged search unlawful.  See *id*. at 512, 523.

The Court held that the totality of the circumstances gave rise to the requisite reasonable suspicion to justify the minimal intrusion of a brief stop and an identification check, as the context of a large number of armed persons coming into a restaurant together is an objectively novel and alarming set of circumstances, even though none of the individuals had committed an obvious crime by doing so.  See *id.* at 523-524.  The facial legality of the conduct is not central to the analysis.

7

> Thus, the question here is not whether an individual in certain jurisdictions of Pennsylvania may legally openly carry firearms. It is not contested by the Individual Defendants (for purposes of this Motion) that such conduct is legal. Rather, the question is whether a police officer has a reasonable suspicion, justifying a stop and a short-lived inspection of a person's driver's license, when they are confronted by a significant number of people exercising their open carry rights in a novel or unexpected way, at an unexpected time and place.

*Id*. In so holding, the Court noted that "[t]here are any number of activities, legal in themselves, but taken collectively may pose risks and dangers (to the public and to officers on the scene) and thereby generate a reasonable suspicion to justify what would otherwise be a Fourth Amendment invasion." *Id.*

This holding is consistent with several other Courts which have addressed the question. In *Baker v. Schwarb*, 40 F.Supp.3d 881 (E. D. Mich. 2014), the Eastern District of Michigan held that "[the plaintiff's] all-black garb and ominous rifle… coupled with his proximity to a hospital was sufficiently unusual for a law-abiding citizen to warrant a degree of alarm for the safety of people nearby." *Id*. at 889. Likewise, in *Deffert v. Moe*, 111 F.Supp.3d 797 (W. D. Mich. 2015), the Western District of Michigan held that law enforcement had reasonable suspicion for an investigatory stop of the plaintiff who was "walking in a residential neighborhood across the street from a church in service on a Sunday morning… wearing camouflage pants and an FNP-45 Tactical pistol secured in a leg holster" and loudly singing. *Id*. at 809. Further, in *Embody v. Ward*, 695 F.3d 577 (6th Cir. 2012), the Sixth Circuit held a Tennessee park ranger justified in an investigatory detention of a person walking through a state park "in camouflage carrying an AK-47 across his chest" to determine the legality of the weapon. *Id*. at 580.

Context matters, and the relevant reasonable suspicion analysis is much broader than a yes-or-no question of whether carrying a firearm is legal. What is innocent conduct in one situation may be suspicious conduct in another. Wearing a ski mask is legal, whether it is worn into a ski lodge or

8

into a bank. However, it is beyond reasonable dispute that these acts have different connotations, and raise different levels of suspicion, in these diverse circumstances. The Plaintiff would have the Court reject this commonsensical nuance in favor of oversimplification. Mr. Walker was not carrying a firearm in an abstract vacuum; he was carrying an AR-15 style rifle while walking toward a school, less than a week after a notorious large-scale school shooting involving that same style of firearm. Even if the Court is not inclined to rule as a matter of law that this raises sufficient reasonable suspicion for an investigatory stop, a reasonable jury could certainly determine that such suspicion existed.

Likewise, a jury could find that the officers had a reasonable suspicion that Mr. Walker was underage. If that had been the case, Mr. Walker would have been guilty of a misdemeanor under W. Va. Code § 61-7-8, which prohibits the carrying of deadly weapons by persons under the age of eighteen (18). At the time of the stop, Mr. Walker was twenty-four (24) years old. Both Cpl. Donohoe and Dep. Pauley testified that, based on their observations of his appearance, they believed it possible that he could have been under the age of (18) eighteen. *Depo. of Brandon Pauley*, Pg. 17, Line 22 – Pg. 18, Line 4; Pg. 23, Line 23 – Pg. 24, Line 2; *Depo. of Brian Donohoe*, Pg. 23, Lines 6-11. This suspicion was heightened by the fact that Mr. Walker was not driving, which raises further inference of youthfulness. See *id*. While Plaintiff's counsel raised the fact that Mr. Walker has a beard during his deposition, facial hair is not uncommon among teenagers, and Mr. Walker conceded that he is routinely asked to show identification when he purchases tobacco products. *Depo. of Michael Walker* at Pg. 45, Lines 1-5. Thus, under a test for objective reasonableness, at a bare minimum, a reasonable jury could conclude that the officers were additionally justified in stopping Mr. Walker on reasonable suspicion of a violation of W. Va. Code § 61-7-8.

This case can be analogized to the holding in *Combs v. City of Birmingham*, Case No. 12-

14528, 2013 U.S. Dist. LEXIS 124335, 2013 WL 4670699 (E. D. Mich., Aug. 30, 2013). The *Combs* plaintiff was eighteen (18) years old and openly carrying a rifle across his back when he was stopped by law enforcement and requested to provide his identification due to his youthful appearance. See *id*. at *5-*7. The *Combs* plaintiff insisted he was of legal age, but defiantly refused to provide identification, claiming that he was not required to do so. See *id*. at *5. While a subsequent search of his person uncovered his driver's license which showed him to be eighteen (18), he was nonetheless arrested for several charges, including obstructing a police officer. See *id*. at *6. The Court granted summary judgment to the officers as to the plaintiff's subsequent § 1983 claim, holding that there was probable cause to arrest the plaintiff for obstruction, because he had refused the officers' "lawful command" that he produce proof of his age. *Id*. at *22-*23. In so holding, the *Combs* Court relied in part on *Klaucke v. Daly*, 595 F.3d 20 (1st Cir. 2010), wherein the First Circuit held that an officer's demand to see the driver's license of a person suspected of underage possession of alcohol was reasonable, and that the officer was not required to accept the person's word that he or she was over twenty-one (21). See *id*. at 25. Likewise, a reasonable jury could find that Cpl. Donohoe was justified by his belief that there was a possibility Mr. Walker could be underage so as to request identification and verify the same, rendering the stop lawful.

### 2. A reasonable jury could, and likely would, find that the officers engaged in a valid community caretaking function when stopping Mr. Walker.

The community caretaker function is a recognized exception to the Fourth Amendment. *U.S. v. Pollard*, 595 Fed. Appx. 204, 206 (4th Cir.2014) (holding that officers approaching a stopped vehicle does not implicate Fourth Amendment because officers acting in a community caretaking capacity); *U.S. v. Brown*, 447 Fed. Appx. 706, 710 (6th Cir.2012); ("No Fourth Amendment violation results when an immediate caretaking interest justifiably compels an officer's intrusions."); *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408 (1978) ("the Fourth Amendment does not bar

police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid."); *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943 (2006) ("One exigency obviating the requirement of a warrant is the need to assist the persons who are seriously injured or threatened with such injury."); *Ziegler v. Aukerman*, 512 F.3d 777, 785 (6th Cir.2008); *United States v. Coccia*, 446 F.3d 233, 238 (1st Cir.2006).

The community caretaking function of the police may come into play when there is a risk of danger to the police or others, and may, therefore, be properly classified as an example of exigent circumstances. See *Ziegler* at 785. Community caretaking functions include stopping or seizing a citizen for his own safety and/or the safety of others, regardless of the officers' suspicion of criminal activity or lack thereof. See *U.S. v. King*, 990 F.3d 1552, 1560 (10th Cir. 1993) ("In the course of exercising this non-investigatory function, a police officer may have occasion to seize a person ... in order to ensure the safety of the public and/or the individual, ***regardless of any suspected criminal activity.***) (Emphasis added). Thus, this exception allows an officer "to detain individuals to prevent them from harming themselves or others." *Walker v. City of Orem*, 451 F.3d 1139, 1150 (10th Cir.2006) (citing *King* at 1560); see also *U.S. v. Rodriguez-Morales*, 929 F.2d 780, 784-785 (1st Cir. 1991) ("In performing this community caretaking role, police are expected to aid those in distress, combat actual hazards, ***prevent potential hazards from materializing*** and provide an infinite variety of services to preserve and protect public safety.") (Emphasis added); *U.S. v. Nord*, 586 F.2d 1288, 1290 (8th Cir.1978) (routine community caretaking functions of police include "responding to calls to assist persons in need of immediate aid").

In this case, even if it were to be assumed that the officers' stopping of Mr. Walker, and Cpl. Donohoe's subsequent conducting of an identification check were conducted without reasonable suspicion, a reasonable jury could, and likely would, still find that this brief interaction was the valid

11

exercise of the community caretaking function. While the Plaintiff chose to ignore the facts in arguing for his Motion for Summary Judgment, a reasonable jury could certainly conclude, especially in our present era of widely-publicized public gun violence, that a brief investigatory stop of an individual who appears to be headed toward a school with a firearm is a valid attempt to "prevent potential hazards from materializing" and "ensure the safety of the public." See *King* at 1560; *Rodriguez-Morales* at 784-785. The Court in *Deffert v. Moe*, 111 F.Supp.3d 797 (W. D. Mich. 2015), cited *supra*, agreed in the case of the officer who stopped and detained Mr. Deffert for investigatory purposes when he was observed carrying a tactical pistol outside a church in service. See *supra* pgs. 12-13; see also *Deffert* at 806-808. In addition to finding that the investigatory stop and detention was a valid *Terry* stop, the Court also found it to be a valid community caretaking function. See *Deffert* at 806-808.

As discussed in the Defendants' own memorandum in support of their Motion for Summary Judgment, it is the Defendants' primary contention that, based on the totality of the objective circumstances known to the officers at the time, it is in fact the defense that is entitled to summary judgment, based on the above. However, at a minimum, a reasonable jury could, and likely would, find the testimony and facts on the record in this case sufficient to invoke the community caretaker function.

> **3.    The Plaintiff's reliance on *United States v. Black* is misplaced, because the case is easily distinguishable.**

To argue contrary to the above, the Plaintiff relies almost exclusively on the Fourth Circuit's holding in *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013). However, this reliance is misplaced, because it is easily distinguishable from the present circumstances.

In *Black*, Charlotte police officers observed a man, later identified as Dior Troupe, sitting alone in a car at a gas pump at approximately 10:00 PM. See *id*. at 534. They did not see him enter

12

the gas station, and had no knowledge of his conduct before that point. See *id*. The gas station he was sitting at was reported to have been in a high crime area. See *id*. The police ran the man's license plate and found no violations. See *id*. After observing him for approximately three (3) minutes, he pulled out of the gas station, and they followed him to a parking lot between two (2) apartment buildings. See *id*. He then exited his vehicle and approached a group of five (5) individuals sitting in a semi-circle and engaged in conversation. See *id*.

The officers then approached the group and observed that Mr. Troupe was openly carrying a firearm. See *id*. at 535. After securing Mr. Troupe's firearm, the officers began to frisk other persons in the group based on a hypothetical police-created "rule of two" that suggests the presence of one gun makes the presence of another more likely. See *id*. After an interaction with Mr. Black during which he volunteered his ID which showed an address in another part of North Carolina, he tried to leave the scene, which led to the discovery of a concealed firearm on his person. See *id*. He was then arrested for being a felon in possession of a firearm. See *id*. In his subsequent criminal proceeding, the Fourth Circuit held that the gun should be suppressed, because the search was conducted without reasonable suspicion.

In so holding, the Court reasoned that the totality of the circumstances did not give rise to a reasonable suspicion of criminal activity. Observing a person sit for three minutes at a gas station, drive to an apartment complex, and approach a group of apparent acquaintances while open-carrying a firearm in a state where that is a legal act was held to be legal, non-suspicious activities which did not justify an investigatory detention, much less of the entire group of persons. See *id*. at 541-542. While the officers testified that Mr. Troupe's conduct was indicative of a potential drug transaction, the Fourth Circuit found that to be an unwarranted conclusion. See id. at 541. None of the actions of Mr. Troupe individually, including his carrying of a firearm, nor taken together, amounted to

reasonable suspicion to search Mr. Black. The presence of a firearm was coupled only with "irrational assumptions based on innocent facts." *Id*. at 542. The opinion strongly implies that the *Black* facts amounted to a transparent case of racial profiling. See *id*.

The key that distinguishes *Black* from this case is the all-important context discussed above. The holding of *Black* which Plaintiff relies on is that the exercise of a state-conferred right to openly carry firearms cannot, "***without more***," justify an investigatory detention. *Black* at 540 (Emphasis added). Here, there is more. The Plaintiff appeared to be approaching an in-session school carrying an AR-15 style rifle one week after the Parkland shooting, and initially refused to tell the officers where he was going. *Depo. of Brandon Pauley*, Pg. 16, Line 11 – Pg. 17, Line 7; *Depo. of Brian Donohoe*, Pg. 22, Line 1 – Pg. 23, Line 5; *Depo. of Michael Walker*, Pg. 31, Lines 7-10; see also ECF Doc. No. 36 at pg. 5; ECF Doc. No. 36 at Exhibit B. "Reasonable officers may well have been concerned with what [the plaintiff] would do next, not what they had already done, or were doing." *Baker v. Schwarb*, 40 F. Supp. 3d 881, 891 (E. D. Mich. 2014). Further, the officers testified that his appearance suggested he could have been under eighteen (18) in a state where the carrying of weapons by minors is illegal. Far more suspicious facts are afoot in the present case, about which *Black* has nothing to say, making it of little practical application here.

### C. The Plaintiff is not entitled to summary judgment, because any constitutional violation which may have occurred was not a violation of a clearly established right.

Governmental officials performing discretionary functions are shielded from liability for money damages so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). Moreover, "there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law.

Second, the manner in which this right applies to the actions of the official must also be apparent." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (citing *Tarantino v. Baker*, 825 F.2d 772, 774-75 (4th Cir. 1987), *cert. denied*, 489 U.S. 1010, 103 L. Ed. 2d 180, 109 S. Ct. 1117 (1989)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id*. (citing *Anderson v. Creighton*, 483 U.S. 635, 639-40, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987); *Gooden v. Howard County*, 954 F.2d 960, 968 (4th Cir. 1992) (en banc).

It is not sufficient that a right be clearly established in an abstract sense; it must be clearly established in its particularized application.

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless that very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Maciariello* at 298 (quoting *Anderson* at 639-640). Applicable to the instant matter, this means that it would be improper to state that a clearly established right of Mr. Walker's was violated merely because the 4th Amendment and the legality of openly carrying firearms are clearly established. Such an interpretation of qualified immunity "would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id*.

The law surrounding the intersection of the open carrying of deadly weapons and the Fourth Amendment is developing. A review of controlling case law does not provide clear guidance, and, as cited above, persuasive case precedent in fact suggests that Cpl. Donohoe's conduct in stopping Mr. Walker and checking his identification was legal, either as a valid investigatory stop or a

15

community caretaking function, in light of the totality of the circumstances.

No statutory or case law to date has clearly established Mr. Walker's right to walk toward a school with an AR-15, free from the questions of law enforcement. At least, the Plaintiff has not identified any in his Memorandum. As discussed above, the *Black* case does not clearly establish such a right. What the Plaintiff has tried to argue in his Memorandum is that the facial legality of openly carrying firearms in West Virginia is sufficient to clearly establish a broad and nearly unchecked right to do so in any context, absent an obvious, visually apparent, and contemporaneous commission of a crime. As the above-cited case law indicates, this is not how qualified immunity is applied. Almost no constitutional right is without limitation. Just as the First Amendment does not clearly establish a right to yell "bomb" on an airplane, the Fourth Amendment does not clearly establish a right to approach a school with an AR-15 unimpeded.

Dep. Pauley is even farther removed from a clear constitutional violation under the facts of this case. The worst that can be reasonably argued as to the state of the relevant law, as discussed above, is that it arguably does not clearly validate Cpl. Donohoe's actions. It certainly does not clearly establish them as unlawful. And it most certainly does not so clearly establish them as unlawful that a junior officer like Dep. Pauley would be constitutionally remiss in failing to intervene against his far more senior superior officer.

Therefore, even if this Court finds a constitutional violation in the officers' conduct, it cannot be said to have been a violation of a clearly established right that would be readily apparent to a reasonable officer. The Plaintiff is therefore not entitled to summary judgment.

## IV. CONCLUSION

**WHEREFORE**, for the reasons stated herein, the Defendants respectfully pray this Honorable Court DENY the Plaintiff's Motion for Summary Judgment, and grant them such other relief as the Court deems just and proper.

**BRIAN E. DONOHOE and BRANDON W. PAULEY,**
**By Counsel,**

 /s/ Adam K. Strider
**Charles R. Bailey (WV Bar #0202)**
**Adam K. Strider (WV Bar #12483)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia  25337-3710**
**T: 304.345.4222**
**F: 304.343.3133**
**cbailey@baileywyant.com**
**astrider@baileywyant.com**

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

**MICHAEL WALKER, individually,**

    Plaintiff,

v.                                                      Civil Action No. 3:18-cv-01523
                                                    Honorable Robert C. Chambers

**M.H. LOVEJOY, in his individual capacity;**
**B.E. DONAHOE, in his individual capacity;**
**B.W. PAULEY, in his individual capacity;**
**PUTMAN COUNTY COMMISSION, a political subdivision of the State of West Virginia,**

    Defendants.

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a true and correct copy of foregoing "**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**" was served upon the following party through the Court's Electronic Case Filing (ECF) system on this day, December 27, 2019:

John H. Bryan, Esq.
Law Office of John H. Bryan
611 Main Street
PO Box 366
Union, WV  24983
Email Address: jhb@johnbryanlaw.com
*Counsel for Plaintiff Michael Walker*

                                                                 /s/ Adam K. Strider
                                             **Charles R. Bailey (WV Bar #0202)**
                                             **Adam K. Strider (WV Bar #12483)**
                                             **BAILEY & WYANT, PLLC**
                                             **500 Virginia Street, East, Suite 600**
                                             **Post Office Box 3710**
                                             **Charleston, West Virginia  25337-3710**
                                             **T: 304.345.4222**
                                             **F: 304.343.3133**