IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MICHAEL WALKER, individually,

        Plaintiff,

v.                               CIVIL ACTION NO. 3:18-1523

B. E. DONAHOE, in his individual capacity,
B. W. PAULEY, in his individual capacity,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Responding to a 9-1-1 call, Brian Donahoe and Brandon Pauley of the Putnam County Sheriff's Department stopped Michael Walker while he was walking down a road openly carrying an AR-15-style rifle. Walker alleges Donahoe seized him in violation of the Fourth Amendment and that Pauley is liable for not intervening. The parties now cross-move for summary judgment. Because Donahoe had reasonable suspicion to stop Walker and run a criminal history check, the Court grants summary judgment in the defendants' favor.

**I. BACKGROUND**

On Wednesday, February 21, 2018, Walker was walking down Route 33 in Scott Depot, Putnam County, West Virginia. ECF No. 38-2, at 6:17–7:2. Walker testified it was in the morning. ECF No. 33-3, at 27:06–09. He wore a black shirt and camouflage pants. ECF No. 37, at 8:20. He had a backpack on and an uncased AR-15-style rifle strapped to his back. *Id.*; ECF No. 38-3, at 22:13–27. Someone saw Walker and called 9-1-1 to report that an individual was walking along

the highway with a gun, so Donahoe and Pauley were sent to find him. ECF No. 38-1, at 6:15–24; ECF No. 38-2, at 6:17–7:17.

It is well known to the Court that Route 33 is heavily travelled and contains significant commercial development. When Donahoe and Pauley located Walker, they knew that Walker was walking toward and was less than a mile from Teays Valley Christian School. ECF No. 38-1, at 22:1–16; ECF No. 38-2, at 16:12–20. Donahoe and Pauley were also aware that the nationally-covered school shooting in Parkland, Florida, had occurred less than a week earlier. ECF No. 38-1, at 22:17–21; ECF No. 38-2, at 16:21–23. Because of the Parkland shooting, Donahoe and Pauley were on heightened alert for copycat crimes. ECF No. 38-1, at 22:22–23:05; ECF No. 38-2, at 16:24–17:03.

Walker began filming the encounter with his cell phone as soon as he saw Donahoe and Pauley. ECF No. 38-3, at 26:13–27:1. In the video, Donahoe asks Walker where is going, and Walker responds, "up to a buddy's." ECF No. 37, at 00:10. Donahoe then asks Walker repeatedly for identification, but Walker refuses and insists he does not need to identify himself unless he has committed a crime. *Id.* at 00:16. The encounter grows more tense, and Donahoe asks Walker where his destination is, to which Walker responds, "you don't need to know that." *Id.* at 00:55. Walker then relents and hands over his identification. *Id.* at 00:58.

After receiving Walker's identification, Donahoe calls it in to the Putnam County 9-1-1 center to run a criminal history check. *Id.* at 01:15. As the criminal history check is running, Walker and Donahoe begin arguing about whether Donahoe and Pauley had authority to stop Walker. *Id.* at 01:52. Walker asks Donahoe if he is being detained, and Donahoe tells him he cannot leave until Donahoe gives him permission. *Id.* at 2:37–2:51. The two men continue arguing about Donahoe's authority to stop Walker. *Id.* at 2:51–4:00. Donahoe asks Walker why he needs to carry an AR-15,

and Walker responds, "I don't answer questions." *Id.* at 4:00. Donahoe then tries to confirm the address on Walker's identification, but Walker again says, "I don't answer questions." *Id.* at 4:13. Donahoe then asks, "what do you got, a Colt?," and Walker responds again, "I don't answer questions." *Id.* at 4:30.

The encounter escalates when Donahoe steps closer to Walker to inspect his rifle. *Id.* at 4:34. Donahoe begins cursing at Walker and scolding him for resisting Donahoe's questions. *Id.* at 4:30–6:10. The dispatcher then tells Donahoe that Walker had been found not guilty of obstructing an officer and was convicted for possession of a controlled substance. *Id.* at 6:25. Walker tells Donahoe that the conviction was a misdemeanor, not a felony. *Id.* at 6:40. Donahoe then berates Walker about Donahoe's authority to run background checks on people carrying firearms. *Id.* at 6:57–7:40. Donahoe gives Walker back his identification and tells him to leave. *Id.* at 7:40. The interaction lasts seven minutes and forty-five seconds.

Having previously dismissed Counts One, Two, and Five of Walker's Complaint, only Counts Three and Four remain. *See* ECF No. 32. Count Three alleges Donahoe unreasonably seized Walker in violation of the Fourth Amendment. ECF No. 1, at 12–13. Count Four alleges Pauley is liable as a bystander for not intervening. *Id.* at 13–14. The parties now cross-move for summary judgment.

## II. LEGAL STANDARD

A court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576

(4th Cir. 2010). "The moving party is 'entitled to judgment as a matter of law' when the nonmoving party fails to make an adequate showing on an essential element for which it has the burden of proof at trial." *Id.* (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999)). At summary judgment, the Court will not "weigh the evidence and determine the truth of the matter," nor will it make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249 (1986); *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991). Instead, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (internal quotations omitted).

### III. DISCUSSION

**A. No Fourth Amendment violation occurred.**

**1. Reasonable suspicion existed to stop Walker.**

The "touchstone" of any Fourth Amendment analysis is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). To be reasonable, a warrantless investigatory stop generally requires "a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30). Reasonable suspicion requires officers to "have a particularized and objective basis for suspecting the particular person stopped of criminal activity," for "[t]here is no reasonable suspicion merely by association." *U.S. v. Cortez*, 449 U.S. 411, 417–18 (1981); *U.S. v. Black*, 707 F.3d 531, 539–40 (4th Cir. 2013). Reasonable suspicion considers the "totality of the circumstances," which includes the "various objective observations" from which an officer can make deductions. *Cortez*, 449 U.S. at 417–18.

At oral argument, the parties disputed how to apply the objective reasonable suspicion standard. Walker argued the facts related to him being a potential threat to the school or a minor unlawfully carrying a firearm are irrelevant because Donahoe, as evidenced in the video of the encounter, was not subjectively motivated by these facts. Instead, Donahoe appears exclusively concerned with whether a prior conviction prohibited Walker from carrying the firearm. However, the Fourth Circuit has made clear that "[b]ecause reasonable suspicion is an objective test, we examine the facts within the knowledge of [the officer] to determine the presence or nonexistence of reasonable suspicion; we do not examine the subjective beliefs of [the officer] to determine whether he thought that the facts constituted reasonable suspicion." *U.S. v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004). Thus, courts may find in favor of an officer even though the proffered basis for reasonable suspicion does not match the officer's subjective motivations. *E.g. U.S. v. Hernandez-Mendez*, 626 F.3d 203, 211–14 (4th Cir. 2010) (holding officer's subjective intent did not invalidate objectively reasonable action); *U.S. v. Branch*, 537 F.3d 328, 340 (4th Cir. 2008) (rejecting defendant's arguments regarding officer's subjective intent in reasonable suspicion analysis). The parties here do not dispute the material facts outlined in the Court's factual summary were within Donahoe's knowledge when he stopped Walker. Therefore, the Court appropriately considers these facts in deciding whether reasonable suspicion existed.

In determining whether reasonable suspicion existed, the Court is mindful of the Fourth Circuit's instruction that "where a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention." *Black*, 707 F.3d at 540. What qualifies as something "more" is a developing area of law as courts face the expansion of open carry, which can arouse suspicion in combination with other innocent facts. *See U.S. v. Arvizu*, 534 U.S. 266, 277–78 (2002) (holding that factors "susceptible of innocent explanation" may

"form a particularized and objective basis" for reasonable suspicion when considered together). The parties here only dispute whether the uncontested facts of the encounter constitute the something "more" required for reasonable suspicion to stop Walker as he openly carried his semi-automatic rifle. After considering the issue, the Court concludes reasonable suspicion existed.

First, Donahoe had reasonable suspicion that Walker was violating West Virginia Code § 61-7-8, which prohibits minors under the age of eighteen from carrying firearms. In *Combs v. City of Birmingham*, the court similarly held that officers lawfully stopped a man openly carrying a rifle on his back because the man's young appearance generated reasonable suspicion that he was a minor unlawfully possessing the firearm. No. 12-14528, 2013 WL 4670699, at *9 (E.D. Mich. Aug. 30, 2013); *see also Schwarb*, 40 F. Supp. 3d at 887–88 (E.D. Mich. 2014) (holding officers who stopped two men openly carrying firearms had reasonable suspicion they were minors unlawfully possessing them). Although Walker was twenty-four at the time of the stop, his youthful appearance and the fact that he was walking rather than driving provided a basis for a reasonable officer to suspect he was a minor. ECF No. 38-3, at 6:20–21.

Second, the facts within Donahoe's knowledge constituted reasonable suspicion that Walker posed an imminent threat to students and staff at Teays Valley Christian School. The nationally-covered Marjory Stoneman Douglas High School shooting in Parkland, Florida, had occurred less than one week before, prompting Donahoe and any reasonable officer to be on heightened alert for copycat crimes. ECF No. 38-1, at 22:17–23:05. Donahoe was dispatched to the scene after a concerned citizen called 9-1-1 to report seeing a man with a gun walking down the street. ECF No. 38-1, at 6:15–24; *see Deffert v. Moe*, 111 F. Supp. 3d 797, 809 (W.D. Mich. 2015) (holding an officer responding to a 9-1-1 call about a man carrying a firearm, as opposed to randomly stopping the man, supports finding reasonable suspicion); *Baker v. Smiscik*, 49 F. Supp.

3d 489, 499 (E.D. Mich. 2014) (holding the same). Donahoe stopped Walker less than a mile from the school as Walker headed in the school's direction. ECF No. 38-1, at 22:1–16; *see Deffert*, 111 F. Supp. 3d at 809 (holding an openly carrying man's proximity to a church supports finding reasonable suspicion); *Baker v. Schwarb*, 40 F. Supp. 3d 881, 891 (E.D. Mich. 2014) (holding the proximity of two openly carrying men to a hospital contributed to reasonable suspicion). Walker was dressed in a black shirt and camouflage pants. ECF No. 37, at 8:20; *see Embody v. Ward*, 695 F.3d 577, 581 (6th Cir. 2012) (finding an openly carrying man's military-style camouflage clothing contributed to reasonable suspicion); *Deffert*, 111 F. Supp. 3d at 809, 810 (holding the same). Although AR-15-style rifles are no less protected by the state's open carry law, the firearm type contributed to reasonable suspicion here. Seeing a man carrying a shotgun or more traditional hunting rifle might not arouse suspicion in an area where hunting is common, but AR-15s are not commonly used for hunting. *See Smiscik*, 49 F. Supp. 3d at 498 (holding an "unusual" display of firearms contributed to reasonable suspicion). They are, however, frequently used in mass shootings, including the school shooting in Parkland. Lastly, Walker's youthful appearance, being only twenty-four at the time, and the fact that he was walking rather than driving, heightened suspicion that he was of high-school age and a student at Teays Valley Christian School. ECF No. 38-3, at 6:20–21.

        **2. The extent of the intrusion and length of the stop were reasonable.**

When an officer begins an investigatory stop, the extent of the intrusion must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. Officers must "diligently pursue[ ] means of investigation that [are] likely to confirm or dispel their suspicions quickly." *U.S. v. Sharpe*, 470 U.S. 675, 686 (1985). However, officers' suspicions of criminal activity "may reasonably grow over the course of a [stop] as the

circumstances unfold and more suspicious facts are uncovered." *U.S. v. Linkous*, 285 F.3d 716, 720 (8th Cir. 2002). As an interaction progresses, officers must continue to rely on "commonsense judgments and inferences about human behavior" to assess the situation. *See Wardlow*, 528 U.S. at 125.

 Here, Donahoe did not extend his investigation beyond what was needed to resolve the reasonable suspicion previously outlined. Essentially, Donahoe demanded Walker's identification, ran a criminal background check, and then dismissed Walker. *See* ECF No. 37. The Fourth Circuit made clear that "[b]eing a felon in possession of a firearm is not the default status," so officers cannot run a background check simply because someone is openly carrying a firearm. *Black*, 707 F.3d at 540. Therefore, a suspected violation of § 61-7-8 alone cannot justify the background check because Donahoe confirmed Walker was over eighteen once he received Walker's identification. However, a reasonable suspicion still existed that Walker posed a threat to Teays Valley Christian School.

 Once the stop commenced, Walker's defiance further heightened suspicion. He quickly became argumentative and repeatedly refused to identify himself. ECF No. 37, at 00:16. And when asked about his destination, he retorted, "you don't need to know that." *Id.* at 00:55. Refusal to cooperate with an officer alone cannot form reasonable suspicion. *Florida v. Bostick*, 501 U.S. 429, 437 (1991). But it can contribute to reasonable suspicion. *See Wardlow*, 528 U.S. at 124 (holding "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"). For example, the Eighth Circuit ruled in *U.S. v. Suitt* that a suspect's "hesitant, evasive, and incomplete answers" justified prolonging a traffic stop for additional questioning after the officer resolved the stop's initial basis. 569 F.3d 867, 872 (8th Cir. 2009). In the more factually analogous case *Banks v. Gallagher*, the district court held an armed group's evasiveness in revealing their

reason for openly carrying firearms in a family diner contributed to reasonable suspicion. No. 3:08-cv-1110, 2011 WL 718632, at *6 (M.D. Pa. Feb. 22, 2011). A reasonable officer here relying on his or her "commonsense judgments and inferences about human behavior" could have interpreted Walker's defiance as an additional suspicious fact justifying investigation into his possession of the rifle. *See Wardlow*, 528 U.S. at 125.

Running a criminal history check was a minimally intrusive way for Donahoe to dispel suspicion that Walker posed a threat. *See Deffert*, 111 F. Supp. 3d at 810 (holding that running a criminal history check was reasonable to dispel officer's suspicion of man openly carrying). Unlike in *U.S. v. Black*, Donahoe did not frisk Walker, physically restrain him, or seize his firearm. 707 F.3d at 535–36; *see also Schwarb*, 40 F. Supp. 3d at 893 (holding officers reasonably disarmed men openly carrying on a public sidewalk); *Smiscik*, 49 F. Supp. 3d at 499 (holding officers reasonably disarmed man openly carrying inside a donut shop). Nor did Donahoe draw his gun and order Walker to the ground. *See Embody*, 695 F.3d at 581 (holding officer reasonably ordered man openly carrying to the ground at gunpoint); *Deffert*, 111 F. Supp. 3d at 810 (holding officer's decision to order man openly carrying to the ground and disarm him was reasonable). Instead, Donahoe simply detained Walker for an additional six and a half minutes to run the background check.

The length of Walker's detention was also reasonable for Donahoe to gather Walker's identification and run the background check. In all, the encounter lasted seven minutes and forty-five seconds. This is exceptionally short compared to other cases of officers lawfully detaining individuals openly carrying firearms. *See Deffert*, 111 F. Supp. 3d at 810 (holding a thirteen-minute stop was reasonable); *Smiscik*, 49 F. Supp. 3d at 493 (holding a thirty-minute stop was reasonable); *Embody*, 695 F.3d at 581 (holding a two-and-a-half-hour stop was reasonable); *see*

*also U.S. v. Green*, 740 F.3d 275, 281 (4th Cir. 2014) (holding a four minute extension of a traffic stop to run a criminal history check was "a de minimis intrusion on [the defendant's] liberty interest" and did not constitute a Fourth Amendment violation).

Therefore, because Donahoe had reasonable suspicion to stop Walker and the extent of the intrusion and length of the stop were reasonable, the Court grants summary judgment in the defendants' favor as to Count Three.

**B. Even if the Court considered Walker's excluded evidence, Donahoe is not liable.**

Following oral argument on the cross motions for summary judgment, Walker attempted to introduce new evidence that the stop occurred around 6:00 p.m., not in the morning as Walker testified. ECF Nos. 57, 60; ECF No. 33-3, at 27:06–09. In its discretion, the Court denied admission of the evidence because Walker was inexcusably negligent by not producing the evidence earlier. ECF No. 62. However, the Court's ruling on summary judgment would not change even if Walker established the stop occurred near 6:00 p.m.

**1. Reasonable suspicion would still exist to stop Walker.**

Establishing that the stop occurred near 6:00 p.m. would lessen reasonable suspicion that Walker posed a threat of a school shooting. However, the Court would still find Donahoe had reasonable suspicion to stop Walker. First, reasonable suspicion that Walker was violating § 61-7-8 would still apply. And second, the circumstances of the encounter were sufficiently unusual to arouse suspicion that Walker posed a threat. To be sure, the Court cannot treat a type of firearm as inherently suspicious when that firearm is protected by the state's open carry law. *Black*, 707 F.3d at 540 (holding "where a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention"). However, officers must still rely on their commonsense and "practical experience of . . . what transpires on the street" to determine

whether the open carry of a particular firearm in a particular context is unusual enough to warrant investigation. *U.S. v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993). For example, in *Banks v. Gallagher*, the court held reasonable suspicion could exist for an officer to stop a group of armed men inside a family diner. 686 F. Supp. 2d 499, 523–25 (M.D. Pa. 2009). Central to the court's analysis was the fact that the officers were "confronted by a significant number of people exercising their open carry rights in a novel or unexpected way, at an unexpected place and time." *Id.* at 524; *see also Smiscik*, 49 F. Supp. 3d at 497 (holding the plaintiff's "unusual display of multiple firearms" contributed to reasonable suspicion).

  Here, Walker's possession of an AR-15-style rifle under these circumstances was unusual and alarming. Whereas possessing an AR-15 at a shooting range or on one's own property would not raise an eyebrow, there was no obvious reason for the rifle's possession here. Unlike a holstered handgun, like that at issue in *U.S. v. Black*, AR-15s are not commonly carried for self-defense. 707 F.3d at 535. Nor are they traditionally used for hunting. Seeing Walker at 6:00 p.m. in February in an urban area would further diminish an inference that Walker possessed the rifle for hunting because the sun would soon set and hunting after dark is generally prohibited. The rifle being uncased, ready to fire at a moment's notice, and Walker's camouflage pants also contributed to an unusual presentation of the firearm. *See Embody*, 695 F.3d at 581 (finding an openly carrying man's military-style camouflage clothing contributed to reasonable suspicion); *Deffert*, 111 F. Supp. 3d at 809, 810 (holding the same). The sight was unusual and startling enough to prompt a concerned citizen to dial 9-1-1 and for Donahoe, based on his practical experience, to investigate Walker's destination. *See Deffert*, 111 F. Supp. 3d at 809 (holding an officer responding to a 9-1-1 call about a man carrying a firearm, as opposed to randomly stopping the man, supports finding

reasonable suspicion); *Smiscik*, 49 F. Supp. 3d at 499 (holding the same). Together, these facts would form a particularized and objective basis for an investigatory stop.

### 2. Qualified immunity would apply to Donahoe running the criminal history check.

Qualified immunity protects government officials from civil damages in § 1983 actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). If a constitutional violation may have occurred, the Court considers whether the constitutional right was "clearly established," meaning "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001) (citation omitted). The "clearly established" standard ensures officers are only liable "for transgressing bright lines" and not for "bad guesses in gray areas." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (citations omitted). For example, in *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, the Fourth Circuit held the officers' use of a stun gun violated the Fourth Amendment, but qualified immunity applied because the arrestee's right not to be tased was not clearly established. 810 F.3d 892, 909 (4th Cir. 2016).

Here, reasonable suspicion that Walker was violating § 61-7-8 permitted Donahoe to demand Walker's identification and call the dispatcher to confirm its authenticity. *Combs*, 2013 WL 4670699, at *9 ("The principles of *Terry v. Ohio* require a suspect to supply proof of his age when the suspected criminal activity is a minor carrying a loaded weapon in public."). However, that suspicion ended once Donahoe received and verified Walker's identification, so it alone cannot justify Donahoe running a criminal history check.

The Fourth Circuit stated in *U.S. v. Black* that "[b]eing a felon in possession of a firearm is not the default status." 707 F.3d at 540. But this broad observation gave Donahoe limited

guidance in determining what level of suspicion he needed to prolong Walker's detention by six and a half minutes to run a criminal history check. While the facts outlined above regarding Walker's unusual display of the rifle amount to reasonable suspicion for an investigatory stop, extending that stop to check Walker's criminal history may have exceeded constitutional bounds. However, it was not clearly established that the Fourth Amendment prohibited Donahoe from running the criminal history check under the circumstances.

*Black* is of limited help because qualified immunity was not at issue. Even so, the facts here are much stronger for justifying a prolonged detention to determine whether the firearm possession was lawful. In *Black,* the Court found no facts contributing to reasonable suspicion, and the detained men cooperated with the police. 707 F.3d at 539–42. In contrast, Donahoe reasonably suspected Walker of posing a threat based on the facts outlined in the prior section. And, Donahoe's initial suspicion grew as Walker became defiant during the encounter by initially refusing to hand over his identification and tell Donahoe his destination. ECF No. 37, at 00:16–00:55; *see Wardlow*, 528 U.S. at 124 (holding "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"); *Banks*, 2011 WL 718632, at *6 (holding an armed group's evasiveness in revealing their purpose contributed to reasonable suspicion).

Coupled with this suspicion is the very minimal extent and length of the intrusion. As discussed above, Donahoe did not frisk Walker, physically restrain him, or seize his firearm like in *Black*. 707 F.3d at 535–36; *see also Schwarb*, 40 F. Supp. 3d at 893 (holding officers reasonably disarmed men openly carrying on a public sidewalk); *Smiscik*, 49 F. Supp. 3d at 499 (holding officers reasonably disarmed man openly carrying inside a donut shop). Donahoe also did not draw his gun and order Walker to the ground. *See Embody*, 695 F.3d at 581 (holding officer reasonably ordered man openly carrying to the ground at gunpoint); *Deffert*, 111 F. Supp. 3d at 810 (holding

officer's decision to order man openly carrying to the ground and disarm him was reasonable). Instead, Donahoe simply extended the stop by six and a half minutes to run the background check. *See Smiscik*, 49 F. Supp. 3d at 493 (holding a thirty-minute stop of man openly carrying was reasonable); *Embody*, 695 F.3d at 581 (holding a two-and-a-half-hour stop of man openly carrying was reasonable). This delay was a "de minimis intrusion on [Walker's] liberty interest," and a reasonable officer could have believed it was within his or her authority. *Green*, 740 F.3d at 281; *see Deffert*, 111 F. Supp. 3d at 810 (holding that running a criminal history check was reasonable to dispel officer's suspicion of man openly carrying). Therefore, qualified immunity would apply.

### C. Pauley is not liable as a bystander.

Having found no underlying Fourth Amendment violation, Walker's bystander liability claim against Pauley fails. ECF No. 1, at 13–14. The Court therefore grants summary judgment in favor of the defendants as to Count Four.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 33) and **DENIES** Plaintiff's Motion and Amended Motion for Summary Judgment (ECF Nos. 35, 42). The Court further **DENIES AS MOOT** Defendants' Motion for Leave to File Amended Integrated Proposed Pretrial Order (ECF No. 49) and the parties' three pending motions in limine (ECF Nos. 43, 45, 46). The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: March 2, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE